02 FEB -6 AM 10:21
U.S. ... N.D. OF ...

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

**DIANNE M. PALMER,**

Plaintiff,

vs.

CV-00-N-1810-S

**UNITED STEEL WORKERS OF AMERICA, AFL-CIO-CLC, LOCAL 8285, ET AL.,**

Defendants.



ENTERED
FEB 0 6 2002

## Memorandum of Opinion

## I. Introduction

Plaintiff Dianne Palmer filed this lawsuit in the Circuit Court of Jefferson County, Alabama, against her employer Meadowcraft, the United Steelworkers of America Local 8285 ("the Local"), and Zen Pearson, the editor of the Steelworkers' Local 8285 Highlander newsletter. Palmer asserted four causes of action: (1) defamation, (2) negligent supervision/failure to train and supervise, (3) outrage, and (4) negligent and intentional infliction of emotional distress. On June 28, 2000, the defendants removed the action to this court, which subsequently granted Meadowcraft's motion to dismiss as to Palmer's claims of outrage and negligent and intentional infliction of emotional distress.[1] Presently before the court are defendants' motions for summary judgment. [Doc. # 32, 41.] As Palmer's only response to the defendants' motions was a motion to remand [Doc. # 44], the defendants'

[1]To the extent that the court's order dismissing these claims [Doc. # 20] could be read as only applicable to defendant Meadowcraft, the court holds that the reasoning set forth in said order applies with equal force to the other defendants. Thus, plaintiff's outrage claim and negligent and intentional infliction of emotional distress claim are dismissed as to all defendants.



motions are ripe for determination. For the reasons set forth herein, the defendants' motions will be granted.

## II. Facts[2]

Meadowcraft manufactures wrought iron patio furniture. (Palmer Dep. at 116-17.) The United Steel Workers of America ("the Union") is a labor organization as that term is used in the National Labor Relations Act and is the collective bargaining representative of a bargaining unit at Meadowcraft. (Palmer Dep., Ex. 2 at 1.) Palmer, who has been employed by Meadowcraft at its Birmingham, Alabama, facility since 1978, works as an inspector on the day shift. (Palmer Dep. at 9-11, 98-99, 107.) The Local is a labor organization as that term is used in the National Labor Relations Act, and assists the Union in the administration of the collective bargaining agreement ("CBA") between the Union and Meadowcraft. (Pearson Dep. at 11-12; Palmer Dep., Ex. 2 at 1.) Palmer is a member of the Union and is subject to the CBA between Meadowcraft and the Union. (Compl. at ¶ 9; Palmer Dep., Ex. 2.)

Defendant Zen Pearson was editor of the Union Local 8285 Highlander Newsletter from approximately October, 1999, through March, 2000. (Pearson Dep. at 12-13.) Prior to October, 1999, the Local had never had a newsletter. (*Id.* at 14.) The president of the Local at that time, James Moore, asked Pearson to publish a newsletter because Union members had indicated a desire for such. (Pearson Dep. at 17-18.) During the six months that Pearson was editor, she published four newsletters. (Pearson Dep. at 14.)

Pearson determined the content of the newsletters on her own, creating them using

[2] The facts set out below are gleaned from the defendants' submissions and the record.

her home computer. (*Id.* at 19, 22.) She did not speak with anyone in Meadowcraft management regarding the newsletter prior to publishing it. (*Id.* at 22-23.) She handed the newsletters out before clock in time and also left some at her booth for employees to pick up. (*Id.* at 24.) The last newsletter was published in March, 2000. (*Id.* at 14-15.) In the March, 2000, edition of the Local 8285 Highlander, Pearson authored an article captioned "D P What is a D P?" (*Id.* at 31, Ex. 1.) The article, in its entirety, reads:

> 1. Always into someone else's business.
> 2. Loud mouthed and arrogant for no apparent reason.
> 3. Get chaos and confusion started among members , then sits back to see what becomes of it .
> 4. Rude in every respect.
> 5. Shows bad bathroom manners by taking up stalls, . that someone may really need to make use of.
>
> Okay. Now that you've got the idea members ,. Please!! Don,t be a D P and try your best not the have a D P day .
>
> The article above does not reflect any particular person all similarities are just coincidental.

(*Id.*, Ex.1.)

Palmer was told about the March edition of the newsletter on March 8, 2000. (Palmer Dep. at 131.) Soon thereafter a co-worker gave her a copy of it. (*Id.* at 178.) After Palmer read the newsletter, she went to Pearson and asked her what "D P" meant. (*Id.* at 179-80, 184.) Pearson replied that they were just letters. (*Id.* at 184.) After speaking with Pearson, Palmer saw Human Resources Manager Marty Brack. (*Id.* at 171, 173.) Brack asked Palmer how she liked the newsletter. (*Id.* at 171.) After Palmer responded that she did not appreciate it, Brack replied that Pearson had told him the article was not about her. (*Id.* at 171, 184-85.) Palmer saw the newsletter posted on the bulletin board in the lunch room on

March 10, 2000, after someone brought it to her attention that it was there. (*Id.* at 243.) However, she did not know who had posted it or how long it had been posted, and she never asked anyone to take it down. (*Id.* at 249, 280, 309.)

## III. Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*quoting* Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (*quoting* Fed. R. Civ. P. 56(e)).

After the plaintiff has properly responded to a motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving

party is entitled to judgment as a matter of law. Fed. R. Civ. P 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion

### A. Subject Matter Juridiction

On December 2, 2000, this court denied Palmer's motion to remand on the basis that her remaining claims are completely preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (2001). [Doc. # 20.] Specifically, the court found that in order to resolve the liability of the defendants, the Collective Bargaining Agreement would have to be consulted. *See Lightning v. Roadway Express, Inc.*, 60 F.3d 1551, 1556-57 (11th Cir. 1995). Instead of responding to the defendants' motions for summary judgment, Palmer

decided to file a second motion to remand. [Doc. # 44.] The court, for the purpose of reassuring itself that it did indeed have subject matter jurisdiction, stayed consideration of the defendants' motions (though they were already under submission, per the court's orders of October 24 and November 28, 2001, [Doc. # 46, 47]) and allowed the parties to again brief the issue of subject matter jurisdiction. [Doc. # 51.] The defendants responded in a joint brief on December 14, 2001. [Doc. # 52.] The plaintiff failed to reply.

After due consideration, the court finds that its initial determination was correct, at least in regard to Palmer's claim for negligent supervision/failure to train and supervise. In order to prevail on this claim, Palmer will be required to demonstrate that defendants Meadowcraft and the Local owed a duty to supervise and train Pearson in regard to her role and responsibilities as editor of the union's newsletter. *See Mills v. Wex-Tex Industries, Inc.*, 991 F. Supp. 1370, 1388-89 (M.D. Ala. 1997); *Doe v. Western Restaurants Corp.*, 674 So. 2d 561, 563-64 (Ala. Civ. App. 1995). In order to determine the extent to which, if at all, such a duty exists, the CBA will have to be resorted to and examined. Thus, § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (2001), completely preempts Palmer's negligent supervision/failure to train and supervise claim and subject matter jurisdiction is therefore proper in this court as to that claim.[3] *See Lightning v. Roadway Express, Inc.*, 60 F.3d 1551, 1556-57 (11th Cir. 1995). The court maintains subject matter jurisdiction over all claims not

---

[3] Although a finding of complete preemption supports a claim of defensive preemption, requiring that the plaintiff replead its claim pursuant to the preempting federal statute, *see Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1215 (11th Cir. 1999); *Williams v. Drummond Co, Inc.*, 1999 WL 1215296 (N.D. Ala. 1999), the defendants in this case chose not to raise this defense. They chose instead to address each of Palmer's claims on the merits as though the alternative defense of preemption was unavailable. The court will therefore resolve Palmer's claims based on the defenses upon which the defendants chose to rely and not upon defensive preemption.

otherwise preempted pursuant to its supplemental jurisdiction. The court will therefore proceed to a determination of the defendants' motions for summary judgment.[4]

**B. The Merits of Palmer's Claims**

Palmer asserts two claims against the defendants. First, she argues that all three defendants are liable to her for defamation based on Pearson's article. Second, she asserts that defendants Meadowcraft and the Local negligently supervised and failed to train defendant Pearson. Each claim is discussed separately.

**1. Defamation**

In Alabama, the elements of the tort of defamation are: "1) a false *and* defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement." *McCaig v. Talledega Publishing Co.*, 544 So. 2d 875, 877 (Ala. 1989) (emphasis in original). The Supreme Court of Alabama recently held that a statement of opinion cannot form the basis of a defamation claim when the plaintiff is a public official or figure. *See Sanders v. Smitherman*, 776 So. 2d 68, 74 (Ala. 2000). The Court, however, has not addressed the question of whether an opinion can serve as the foundation of a defamation action when the plaintiff is a private figure.

Restatement (Second) of Torts § 566 provides: "A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable

[4]The fact that the court has not officially "unstayed" consideration of the defendants' motions is of no consequence as they were deemed submitted prior to the court's stay of consideration.

only if it implies the allegation of undisclosed defamatory facts as the basis for its conclusion." Restatement (Second) of Torts § 566 (1977). In *Sanders*, the Alabama Supreme Court cited Restatement (Second) of Torts § 566 in favor of its distinguishing between statements of fact and opinion in determining whether a statement is actionable. Although it did not explicitly adopt the restatement provision, this court is of the opinion that the Supreme Court of Alabama would adopt the Restatement position when presented with the opportunity. Such an opinion is based not only on the Court's recent citation of § 566 in *Sanders*, but also on its approval or adoption of a number of other Restatement provisions regarding defamation. *See Camp v. Yeager*, 601 So. 2d 924 (Ala. 1992) (§ 568A); *Nelson v. Lapeyhouse Grain Corp.*, 534 So. 2d 1085 (Ala. 1988) (§ 558, § 580B); *Walker v. Majors*, 496 So. 2d 726 (Ala. 1986) (§ 587); *Harris v. School Annual Publishing Co.*, 466 So. 2d 963 (Ala. 1985) (§ 559). *But see WKRG-TV, Inc. v. Wiley*, 495 So. 2d 617 (Ala. 1986) (rejecting § 611).

In *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), the United States Supreme Court held that "[A] statement on matters of public concern must be provable as false before there can be liability under state defamation law, at least in situations, like the present, where a media defendant is involved." *See Milkovich*, 497 U.S. at 19-20. Although the Court specifically reserved ruling on whether such a standard applies in the case of nonmedia defendants, *see Milkovich*, 497 U.S. at 20 n.6, the First Circuit has found, and this court agrees, that "Restatement § 566 seemingly applies the *Milkovich* standard to defamation actions regardless of whether the challenged statements address issues of public or private concern." *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 128 n.2 (1st Cir. 1997). *See also Marshall v. Planz*, 13 F. Supp. 2d 1246, 1257 n.27 (M.D. Ala. 1998)

("While the principles embodied in § 566 find their most frequent application where the challenged statement addresses a matter of public, rather than private, concern, . . . there is no reason to believe that the principles are not equally applicable where a private concern is at issue.") Indeed, comment c to § 566 states: "Although it is thus possible that private communications on private matters will be treated differently, the logic of the constitutional principle would appear to apply to all expressions of [pure] opinion . . . ." Restatement (Second) of Torts § 566, cmt. c (1977).

With the foregoing as background, this court is now left with the task of determining whether the statements at issue in the present case are actionable. As discussed below, several of the statements alleged to be defamatory in the present case are obvious statements of opinion that cannot form the basis of a defamation action. As for the statements that are not as clearly categorized, a number of decisions have been handed down that provide guidance in distinguishing between actionable and non-actionable statements.

A review of pertinent case law begins, of course, with the United States Supreme Court's *Milkovich* opinion, in which the Court held that a statement must be provably false in order to be defamatory. *Milkovich*, 497 U.S. at 19-20. The Court noted that merely placing the words "in my opinion" before a fact is not enough for protection to attach to the statement that follows. *Id.* at 20. Thus, the statement, "In my opinion, Frank is a liar," is not rendered non-actionable because it stands as a statement of opinion. The crucial distinction, the Court found, is whether the statement of opinion "contain[s] a provably false factual connotation." *Id.* Such a connotation, the Court held, would render an "opinion"

actionable. *Id.* Another important consideration, the Court noted, is the context in which the allegedly defamatory statements appear. *Id.* Said the Court:

> Next, the Bresler-Letter Carriers-Falwell line of cases provides protection for statements that cannot "reasonably [be] interpreted as stating actual facts" about an individual. This provides assurance that public debate will not suffer for lack of "imaginative expression" or the "rhetorical hyperbole" which has traditionally added much to the discourse of our Nation.

*Id.* (citations omitted).

In *Levinsky's, Inc. v. Wal-Mart*, 127 F.3d 122 (1st Cir. 1997), the First Circuit was faced with a defamation claim brought by the owners of one store against a competitor, one of the managers of whom alleged that the plaintiff's store was "trashy" and that when one calls the plaintiffs' store, one may be put on hold as long as twenty minutes or "the phone is never picked up at all." *Levinsky's*, 127 F.3d at 126. The court separated the two statements. *Id.* at 128. Finding the statement that the store was "trashy" to be "loose, figurative language," the court held:

> Branding a store, its merchandise, its customers, or its proprietors as "trashy" is uncomplimentary, and it may be unwarranted; in the last analysis, however, such a comment is loose language that cannot be objectively verified. Consequently, it belongs squarely in the category of protected opinion. It follows inexorably that Levinsky's reliance on this unflattering adjective to underpin a defamation claim offends the First Amendment.

*Id.* at 130. Regarding the manager's comments concerning how long one would be put on hold when calling the plaintiff's store, however, the court held that such a statement was capable of being objectively verified as either true or false; thus it could, in the absence of any other defense, support a defamation claim. *See id.* at 130-31.

In *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243 (1st Cir. 2000), the court confronted

a claim of defamation by the subject of a book against the book's publisher. *Gray*, 221 F.3d at 247. The plaintiff, a lobbyist, sued over several statements in the book that he alleged were defamatory. *Id.* The court's treatment of two particular statements complained of is instructive here. One of the statements read: "A senior . . . executive [at the plaintiff's former lobbying firm] insisted that [the plaintiff]'s closeness to the President and others was often faked. 'He completely faked his closeness with a number of senior administration officials.'" *Id.* at 248, 254. In holding the statement not actionable, the court stated that: "This is just the kind of subjective judgment that is only minimally about 'what happened' but expresses instead a vague and subjective characterization of what happened. As we read the case law, the statement is protected opinion." *Id.* at 249. Another statement read: "In the end, several Washington lobbyists feel that Gray and Company ultimately failed because it offered very little real substance." *Id.* at 249, 254. Holding this statement likewise not actionable, the court said, "Some might think it a success, rather than a failure, that his former employer found him competitive and competent enough to buy him out for millions and place him on its board of directors; but what is 'success' in a situation like this one is very much a matter of opinion." *Id.* at 249. Describing the law applicable to determinations of whether particular statements are actionable, the court quoted the following passage from Judge Posner's opinion in *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222 (7th Cir. 1993):

> A statement of fact is not shielded from an action for defamation by being prefaced with the words "in my opinion," but if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.

*Id.* at 248 (citations omitted).

In *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180 (4th Cir. 1998), the Fourth Circuit addressed a defamation claim arising from a short article in Forbes magazine that was extremely critical of Biospherics, Inc., and an alternative sweetener it was developing.[5] *Biosperics*, 151 F.3d 182. After noting *Milkovich's* declaration that a statement could only be actionable if it was, or was based upon, an objectively verifiable fact, the court identified and discussed the second important consideration identified in *Milkovich*. *Id.* at 184. Said the court:

> However, even assuming that all three statements could be verified, no fact finder "'could reasonably . . . interpret[ ]'" any of them as stating or implying "'actual facts.'" *Milkovich*, 497 U.S. at 20, 110 S.Ct. 2695 (quoting *Hustler*, 485 U.S. at 50, 108 S.C.t 876). First, the context and "general tenor of the article," 497 U.S. at 20, 110 S.Ct. 2695, indicate that the piece contains constitutionally protected subjective views, not factual statements. In the long, solemn *Milkovich* article, the author stated that he was "in a unique position of being the only non-involved party to observe" the fight at a high school wrestling match, and Coach Milkovich's later sworn testimony about it, and that Milkovich had repeatedly lied under oath about what actually had happened. *Id.* at 5-6 n.2, 110 S.Ct. 2695. In contrast, the brief Forbes article contains no claim to first-hand knowledge of facts and certainly no accusations of perjury. It has a breezy rather than solemn tone . . . . The context and tenor of the

---

[5] In its entirity, the complained-of article read:

> Biospherics Inc. (BINC, Nasdaq) is a Beltsville, Md. company ($13.4 million in sales over the last 12 months) that dispenses health care information by phone and writes medical reports for the government. So why is the stock, at a recent 7, trading at 125 times trailing 12-month profits? **Hype and hope for a natural, noncaloric sugar substitute--called Sugaree-- that the company's been "developing" for 15 years.** BINC brags that the substance even slows aging. Bullish analyst reports, paid for by the company, propelled the shares from a split-adjusted 4-3/8 to 9-1/2 in 1996. Short the stock. **Investors will sour on Biospherics when they realize that Sugaree isn't up to the company's claims.** Even if the FDA okays BINC to produce Sugaree--a big if--its cost to consumers would be at best five times the price of sugar. Meanwhile, Johnson & Johnson and Hoechst are working on their own, cheaper, sweeteners. Monsanto is perfecting its NutraSweet sugar substitute. **Biospherics shares are easy to borrow; the few independent analysts who follow the company think its stock is worth $2 on current business.**

*Biosperics*, 151 F.3d at 182 (emphasis on allegedly defamatory statements).

> article thus suggest that it reflects the writer's subjective and speculative supposition.

*Id.* The court concluded, "Ultimately, any reasonable person reading [the article] would recognize, based on the tenor, language, and context of the article, that the challenged statements constitute a subjective view, not a factual statement." *Id.* at 186.

In light of the foregoing, the court finds that the allegedly defamatory article at issue in this lawsuit are not defamatory in that they appear to be non-actionable statements of opinion. Moreover, when the article is taken as a whole, there is no way that a reasonable reader would think that the writer is stating fact. This conclusion is easily reached as to the first, second, and fourth statements in the article. Clearly, the statements that a "D P" is "always into someone else's business," "loud mouthed, and arrogant," and "rude in every respect" are highly subjective and do not suggest a factual predicate that can be objectively proved or disproved. Indeed, Pearson does not appear to be claiming through these statements that she is in possession of objectively verifiable facts. Rather, the expressions appear to be nothing more than value judgments, and therefore not actionable.

The third statement, that a "D P" "get[s] chaos and confusion started among members, then sits back to see what becomes of it," proves somewhat of a closer question. However, after due consideration of both the context and the applicable case law, it appears to the court that this statement is not actionable. To hold otherwise would be to say that through this statement, Pearson is suggesting that she is in possession of objectively verifiable facts that support the opinion. However, as the court in *Levinsky's* recognized, in the great continuum of what constitutes fact and what constitutes opinion, as statements

tend toward vagueness, they begin to lose the aura of "fact" and thereby become less actionable. *See Levinsky's*, 127 F.3d at 129 ("The vaguer a term, or the more meanings it reasonably can convey, the less likely it is to be actionable.") The statement at issue here is incredibly vague; indeed, it fits well within the First Circuit's opinion of words that constitute "loose, figurative" language. Moreover, when the statement is put in context and the article is read as a whole, it is clear that "any reasonable person reading [the statement] would recognize, based on the tenor, language, and context of the article, that the [statement] constitute[s] a subjective view, not a factual statement." *See Biospherics*, 151 F.3d at 186.

The final statement, that a "D P" "[s]hows bad bathroom manners by taking up stalls . . . that someone may really need to make use of," would be the most troublesome statement of all five. However, there is a factual predicate to this statement of which Palmer is well aware and has admitted to. Specifically, according to her deposition, Palmer, on one occasion, used a toilette in the bathroom as a chair for the purpose of conversating and resting her legs. Palmer Dep. at 214. A co-worker entered the restroom and asked to use the particular stall in which Palmer was relaxing. *Id.* Upon Palmer's refusal to relinquish the stall, the co-worker stormed out. *Id.* It is clear, then, that the fifth statement is the author's opinion of an occurrence, the facts of which Palmer does not dispute. As a result, the statement is not defamatory.

### 2. Negligent Supervision/Failure to Train and Supervise

The elements of the tort of negligent supervision were discussed by the Supreme Court of Alabama in *Lane v. Central Bank of Alabama*, 425 So. 2d 1098 (Ala. 1983):

> In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being **established by affirmative proof** that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence.

*Lane*, 425 So. 2d at 1103 (emphasis added). This same standard is also applicable to Palmer's allegation of negligent failure to train. *See Zeilke v. AmSouth Bank*, 703 So. 2d 354, 358 n.1 (Ala. Civ. App. 1996) ("After reviewing Alabama caselaw, we see no distinction between claims of wrongful supervision and claims of wrongful training. We, therefore, treat the cases addressing wrongful supervision as applicable to claims of wrongful training."). Thus, to succeed on this count, Palmer is required to put forth evidence that Meadowcraft and the Union knew or should have known of Pearson's alleged incompetence. After a thorough review, the court concludes that the record is entirely devoid of any evidence tending to demonstrate that either Meadowcraft or the Union had or should have had knowledge that Pearson was incompetent to perform the role of editor of the local newsletter. As a result, summary judgment is due to be granted as to this second count.

## V. Conclusion

The court concludes that there is no genuine issue of material fact as to any claim of the plaintiff and that the defendants are entitled to judgment as a matter of law. Summary judgement will therefore be granted in favor of the defendants. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 5th of February, 2002.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE